# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SHELDON SMITH,

        Petitioner,    :    Case No. 3:13-cv-330

  - vs -                            District Judge Thomas M. Rose
                                      Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
  Institution,

                                     :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 36, 43) to the Magistrate Judge's Report and Recommendations recommending the Petition be dismissed with prejudice (Doc. No. 33). The Warden's time for responding to the Objections under Fed. R. Civ. P. 72 has expired and Judge Rose has recommitted the case for reconsideration in light of the Objections (Doc. No. 46).

**The Original Grounds for Relief**

The Petition pleads the following two grounds for relief:

> **Ground One:** Failure of the Trial Court to order a hearing based upon the Defendant's Motion to vacate his plea of no contest after the plea was made but before Judgment and sentence were pronounced, showing that confidential source #1 (Brooks) had had large amounts of money taken from him by the Greene County Ace Task Force that were returned in toto to Mr. Brooks, that confidential source #1 (Brooks) made threats of physical violence

1

>against members of the Greene County Task Force, that the information provided by confidential source #1 (Brooks) was known by the Greene County Task Force to be false as admitted to by the director of the ACE and that confidential source #1 (Brooks) possessed no specific credible information as it pertained to this Petitioner, all in violation of Petitioner's rights under *Brady v. Maryland*, a fair hearing and due process of law as guaranteed by the 6th and 14th Amendments to the United States Constitution.
>
>**Ground Two:** The ineffective assistance of Trial Counsel in failing to competently litigate Petitioner's Constitutional claims including his 4th Amendment rights at the Trial Court level causing his State post-conviction petition to be overruled on the basis of res judicata all in violation of Petitioner's right to effective assistance of counsel and due process of law under the 6th and 14th Amendments to the United States Constitution.

(Petition, Doc. No. 1, PageID 16.)

**Ground One**

The Report found the Petition herein quite confusing in its allegations and tried to discern what argument Petitioner was making. It concluded that if Smith was making a claim that his appellate attorney, Jay Adams, provided ineffective assistance of appellate counsel, that claim was procedurally defaulted because, although Smith made such a claim in his Application for Reopening under Ohio R. App. P. 26(B), he never timely appealed to the Supreme Court of Ohio from denial of that Application (Report, Doc. No. 33, PageID 1188). Even without that default and considering the ineffective assistance of appellate counsel claim on the merits, the Report found rejection of the ineffective assistance of appellate counsel claim by the Second District was not an unreasonable application of Supreme Court precedent. *Id.* at PageID 1192.

However, as the Report noted, Smith's argument in his Traverse was not organized around his two Grounds for Relief, but instead asserted four separately numbered arguments,

quoted in the Report at PageID 1189. Only one of those four arguments was actually pled in the Petition. *Id.*

The Report then construes Ground One for Relief as a direct claim that Judge Wolaver, the state court judge assigned to this case, denied Smith equal protection and due process of law by not holding a hearing on Smith's presentence request to withdraw his plea (Report, Doc. No. 33, PageID 1190, citing Traverse, Doc. No. 31, PageID 1173). The Report concluded there was no federal constitutional law requiring such a hearing and in any event Judge Wolaver held a hearing. *Id.*

The Objections do not take issue with any of this analysis. Instead, they say

> Magistrate Merz states that the issue of TRIAL ERRED IN ACCEPTING A NO CONTEST PLEA THAT WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUTARILY [sic] ENTERD [sic] was not part of the petition, and did not give the State a chance to respond which is <u>not</u> factual. On the last page of the petition under grounds fotr [sic] direct appeal clearly stats [sic]: TRIAL ERRED IN ACCEPTING A NO CONTEST PLEA THAT WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUTARILY [sic] ENTERD [sic], and the State responded to the ground in (Doc. No. 17) at first and second full paragraphs.

(Objections, Doc. No. 36, PageID 1220.) When one looks at the Petition, one finds in the place for spelling out Ground One for Relief the words "See attached memorandum." (Doc. No. 1, PageID 5.) Exactly the same language appears with Ground Two. Doc. No. 1, PageID 7.) Nothing is listed on te form for either Ground Three or Ground Four[1]. When one turns to the "attached memorandum," one finds Grounds One and Two as quoted above spelled out at PageID 16. Then at PageID 17 one finds quoted the Grounds for Post-Conviction Appeal and the Grounds for Direct Appeal. Thus Smith repeated there, as the form required him to do, the grounds he raised on direct appeal and post-conviction appeal. The form requires this because it

---

[1] The standard form for § 2254 petitions only provides space for four grounds for relief, but that does not prevent petitioners from pleading more grounds.

assists the Court in determining whether a habeas petitioner has exhausted available state court remedies. But a petitioner does not successfully plead a ground for relief in habeas by merely repeating the grounds he previously raised on direct appeal.

Smith also asserts the State responded to this claim as if it were raised as a ground for relief in habeas. However, when one turns to the place Smith cites (Return of Writ, Doc. No. 17), one finds merely that the Warden faithfully recites the claims raised on direct appeal. *Id.* at PageID 821.

Having claimed incorrectly in the Objections that he raised this claim as a ground of habeas relief, Smith proceeds to argue his entitlement to effective assistance of trial counsel in plea bargaining for three pages (Doc. No. 36, PageID 1220-22.) However, that argument would be beside the point even if Smith had raised this claim as a ground for relief because there is an important difference between claiming a plea was not voluntary and claiming one received ineffective assistance of trial counsel in plea bargaining.

Exactly the same problem occurs with the second part of the Objections (Doc. No. 36, PageID 1222-23). The Report noted that the claim that the trial court committed a due process error by denying post-conviction relief by finding it was barred by *res judicata* was not pled as a ground of habeas relief (Report, Doc. No. 33, PageID 1189). Smith responds that it was raised as a ground for relief and points, again, to PageID 17 where his counsel reported to this Court that that claim had been raised on appeal from denial of the post-conviction petition. But reporting what was done in another court is not the same as asking for relief on the same claim in this Court.

Smith next objects to the Report's conclusion that there is no constitutional precedent requiring a hearing on a presentence motion to withdraw a no contest plea (Report, Doc. No. 33,

4

PageID 1190). Smith now cites *State v. Xie,* 62 Ohio St. 3d 521 (1992), which held in pertinent part "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the [pre-sentence] withdrawal of the plea." *Id.* at 527. The following pertinent points must be noted:

1. *Xie* is a decision of the Supreme Court of Ohio, not of the United States Supreme Court. Habeas corpus relief is available only for violations of the federal Constitution as declared in U.S. Supreme Court case law. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 562 U.S. 86, ___, 131 S.Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). And even *Xie* did not say its "must" was based on the United States Constitution.

2. The Report found that Judge Wolaver did hold a hearing on the motion to withdraw plea:

> Of course, Judge Wolaver did hold one or more hearings in connection with the motions filed October 2, 2009, including one in which he listened to the recording which supposedly contained new evidence supporting reopening the motion to suppress and also held a hearing on Smith's motion to enforce an asserted original plea agreement. (State Court Record, Doc. No. 5-1, Exh. 19, PageID 223-26.) Petitioner makes no argument about what additional arguments would have been made or evidence presented at a third hearing relating to the October 3, 2009, motions.

(Report, Doc. No. 33, PageID 1190-91.) In the Objections, Smith says the hearing was not supposed to be just about the audiotape and how it undermined probable cause, but he still does not say what else should have been or would have been raised at such a hearing (Objections, Doc. No. 36, PageID 1224-25).

In the next portion of his Objections (PageID 1225-26), Smith claims his counsel did not competently litigate the Fourth Amendment claim. The Report found that Smith had not argued this as an ineffective assistance of trial counsel or ineffective assistance of appellate counsel

5

claim, but de novo on the merits of the Fourth Amendment claim (Report, Doc. No. 33, PageID 1192-93.) Smith does not deal in his Objections with this point in the Report, but again argues the merits of his Fourth Amendment claim de novo, ignoring the Report's reliance on *Stone v. Powell*, 428 U.S. 465 (1976), which holds Fourth Amendment claims cannot be adjudicated in habeas if the State provides a full and fair opportunity to litigate the claim. Smith's argument appears to be that he is right on his Fourth Amendment claim and if he didn't win, it must be because he received ineffective assistance of trial counsel. But the record makes it clear that Judge Wolaver considered and rejected on the merits Smith's claim about the basis of the search warrant. Moreover, to the extent this is an ineffective assistance of trial counsel claim, the Report concluded it was procedurally defaulted because never raised on direct appeal (Report, Doc. No. 33, PageID 1192-93.) The Objections make no response.

Finally, Smith objects to the Report's conclusion that an Ohio R. App. P. 26(A) motion for reconsideration in the Ohio court of appeals does not extend the time for appealing to the Ohio Supreme Court (Report, Doc. No. 33, PageID 1188). Smith is correct in his reading of the law. Prior to July 1, 2010, Ohio R. App. P. 26(A) did provide that a motion for reconsideration would not extend the time to appeal, but the Ohio Supreme Court amended the Rule as of that date to eliminate this language. The Rules Advisory Committee Staff Note on the amendment reads "[t]he amendment to former App. R. 26(A)(now App. R. 26(A)(1)) contemplates a future amendment to the Supreme Court Practice Rules that will extend the time to appeal to the Supreme Court if a party has filed a timely motion for reconsideration in the court of appeals." That amendment appears at Ohio S. Ct. Prac. R. 7.01(A) as follows:

> (5) Effect of a timely filed application for reconsideration with court of appeals

6

> (a) When a party timely files an application for reconsideration in the court of appeals pursuant to App.R. 26(A)(1), the time for filing a notice of appeal from the court of appeals' entry of judgment shall be tolled.
>
> (b) If a timely application for reconsideration is filed in the court of appeals, and the appellant seeks to appeal from the court of appeals' entry of judgment, the appellant shall file a notice of appeal within forty-five days of the court of appeals' decision denying the application for reconsideration, or if reconsideration is granted, from the subsequent entry of judgment.

Thus the citation to Ohio R. App. P. 26(A) in the Return of Writ (Doc. No. 17, PageID 836) cites the older repealed version of this Rule,

However, the difference in the Rules does not help Smith's case because the new rule only extends the time to appeal to the Supreme Court if a **timely** motion for reconsideration is filed. The Second District's denial of Smith's 26(B) Application occurred on January 13, 2012 (Doc. No. 5, PageID 464). Under Ohio R. App. P. 26(A)(1), an application for reconsideration, in order to be timely, had to be filed not later than ten days after that, or by January 23, 2012. What Smith filed on January 23, 2012, was not a motion for reconsideration, but a motion for extension of time to file for reconsideration which was denied. To the extent either one of Smith's original Grounds for Relief is read to raise a claim of ineffective assistance of appellate counsel, that claim is procedurally defaulted because Smith did not in fact timely appeal the 26(B) denial to the Ohio Supreme Court.

Having reconsidered the Report's conclusions on the original two Grounds for Relief in light of the Objections, the Magistrate Judge again recommends they be dismissed with prejudice.

**The Motion to Amend**

On November 10, 2014, Smith, who was still then represented by counsel who filed this case on his behalf, moved to amend the Petition (Doc. No. 30). The purpose of the amendment was "to specifically include a *Franks v. Delaware* [438 U.S. 154 (1978)] argument." *Id.* at PageID 1163. The Court ordered the record expanded to include a recording actually listened to by Judge Wolaver of the Greene County Common Pleas Court in deciding this case and allowed Smith to file any additional memorandum he wanted the Court to consider in support of his Motion to Amend to add a claim relative to *Franks v. Delaware*, That Memorandum was filed November 26, 2014 (Doc. No. 40).

A habeas corpus petition may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The relevant rule is Fed. R. Civ. P. 15. The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc.
> -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to

dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989). *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980).

28 U.S.C. § 2244 provides a one-year statute of limitations for filing habeas corpus petitions. Smith's original Petition narrowly escaped dismissal under that statute when the Magistrate Judge calculated that it had been filed on the last day of the one year (See Report and Recommendations on Respondent's Motion to Dismiss, Doc. 13, PageID 808.) Any amendment, however, would be barred by the statute of limitations unless the amendment related back to the original filing date.

> An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

*Mayle v. Felix*, 545 U.S. 644, 650 (2005).

As detailed above, it is difficult to tell the exact constitutional claim being made in the two original Grounds for Relief. However, both relate to and are based on many of the same facts as this new argument under *Franks v. Delaware, supra.* Indeed, counsel characterized this as more of a new argument than a new claim (Doc. No. 30, PageID 1163). There is no violation of the statute of limitations by allowing Smith to cite *Franks v. Delaware* in support of his First Ground for Relief in lieu of *Brady v. Maryland*, 373 U.S. 83 (1963), which is cited but which is completely inapposite. The *Brady* doctrine is not to be imported into search warrant probable cause analysis. *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998).

9

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a party may challenge the veracity of a search warrant affidavit only upon a substantial preliminary showing that a false statement was included knowingly and intentionally or with reckless disregard for its truth and that the allegedly false statement was necessary for a finding of probable cause. The *Franks* doctrine applies to omissions as well as statements. *United States v. Bonds,* 12 F.3d 540, 568-69 (6th Cir. 1993). However, it is much rarer for omissions to warrant a hearing. *United States v. Atkins*, 107 F.3d 1213, 1217 (6th Cir. 1997).

It appears that what Smith's counsel was doing with submission of the audio recording now added to the record here was to persuade Judge Wolavet to hold a *Franks v. Delaware* hearing. Judge Wolaver considered the recording and the transcript and determined that they did not provide a substantial enough basis to reopen the motion to suppress or to allow Smith to withdraw his plea.

Assuming that what Smith is now arguing is that Judge Wolaver's decision on those two points was contrary to or an objectively unreasonable application of *Franks*, that claim fails. The Fifth Assignment of Error on direct appeal was that the trial court erred in denying the motion to suppress (Appellant's Brief, Doc. No. 5-1, PageID 291). *Franks* is not cited. In overruling this assignment of error, the Court of Appeals

> **[\*P47]** In his fifth assignment of error, Smith contends the trial court erred in partially overruling a motion to suppress. Specifically, he challenges the trial court's finding that a search warrant affidavit established probable cause.
>
> **[\*P48]** This assignment of error concerns an affidavit from Beavercreek detective Craig Polston. The affidavit was presented to a Xenia Municipal Court judge who subsequently issued a search warrant. The affidavit, which contains nine single-spaced pages, alleged that Smith had engaged in a number of drug-related offenses and that various items, including cocaine, crack cocaine, drug paraphernalia, drug-related criminal tools, and drug money,

10

were located in specified vehicles Smith owned, on his person, and in his Xenia residence.

**[\*P49]** Polston, a long-time member of the Beavercreek Police Department and the Greene County drug task force, averred that in May 2008 his task force and other law-enforcement agencies began investigating a drug operation headed by an individual named Reginald Brooks. (Doc. # 31 at Exh. A, Polston afffidavit, P2). According to Polston, he learned that Brooks was using several co-conspirators to steal drugs and drug money from other drug traffickers' residences. (Id.). These co-conspirators used their own residences to store the stolen drugs and cash. (Id.). A confidential source ("CS 1") infiltrated Brooks' organization and recorded "numerous" meetings and phone calls in which Brooks discussed committing future robberies of known drug dealers. (Id. at P3). Polston averred that Brooks contacted CS 1 on May 7, 2008 about planning to rob Sheldon Smith's residence. (Id. at P4). Polston's task force subsequently obtained audio and video surveillance of Brooks, CS 1, and another individual driving to Smith's house and discussing the planned robbery. (Id.). On one of the audio tapes, Brooks stated "that Smith currently has over $ 200,000 in cash and kilograms of cocaine in the attic or basement area" of his residence. (Id.). Brooks later told CS 1 that he had several handguns available to use in robberies. (Id. at P5). Brooks proceeded to instruct CS 1 to go to a particular residence and obtain a handgun from a specified woman. (Id.). Police corroborated that the woman lived at the residence and worked where Brooks told CS 1 she did. (Id. at P7). Brooks changed the plan, however, and had CS 1 obtain the weapon, a loaded semi-automatic handgun, directly from him. (Id. at P6).

**[\*P50]** On May 19, 2008, law-enforcement officers made undercover contact with Brooks and CS 1. They discussed "a home invasion of drug traffickers that were selling or in possession of over ten kilograms of cocaine." (Id. at P10). During the meeting, an undercover officer "informed Brooks that he could provide Brooks with a location where Hispanic males would have large quantities of U.S. Currency and potentially ten to fifty kilograms of cocaine." (Id.). Brooks responded that "he had the additional manpower and capabilities" to steal the drugs and money and proceeded to discuss doing so. (Id.). After the meeting, Brooks investigated the undercover officer and incorrectly concluded that he was not associated with law enforcement. (Id. at P11).

**[\*P51]** On May 22, 2008, Polston and other officers contacted a second confidential source ("CS 2"). According to Polston, CS 2

admitted having purchased crack cocaine from a person named Carlos Anderson between fifty and one-hundred times over the previous two years. (Id. at P12). CS 2 then made a recorded phone call to Anderson about purchasing two ounces of crack cocaine. Police watched as CS 2 proceeded to meet Anderson at an agreed-upon location to conduct the transaction. Anderson and a companion were arrested at the scene, and police found two ounces of crack cocaine in the possession of Anderson's companion. They also found marijuana and a large quantity of cash in Anderson's possession. (Id.).

**[\*P52]** On May 23, 2008, CS 2 identified a particular residence as being one used by Anderson to distribute drugs. (Id. at P13). That same day, police obtained a search warrant and found marijuana and more than three-hundred grams of cocaine inside the residence. (Id. at P16). Detectives then interviewed a third confidential source ("CS 3"), who stated that the cocaine found inside the residence belonged to Anderson and had been obtained from a person named Donald Harrington. (Id. at P17). CS 3 told the detectives that Harrington worked for Sheldon Smith at the L.A. Lounge. (Id.). CS 3 added that Harrington also sold cocaine for Smith. CS 3 informed the detectives that the three-hundred grams of cocaine had been "delivered to Carlos Anderson at the L.A. Lounge parking lot by Donald Harrington." (Id.). According to CS 3, Harrington had taken the cocaine from an older, green, four-door vehicle owned by Smith. (Id.). CS 3 "told the detectives that Harrington was familiar with Smith's drug trafficking business from working at L.A. Lounge and Smith had been Harrington's boss since the L.A. Lounge opened." CS 3 also stated "that after receiving the money for the cocaine Harrington took the money and placed it back in [Smith's] green vehicle." [6] (Id.). CS 3 added that "he/she purchased cocaine from Harrington numerous times at the L.A. Lounge and Harrington would always remove the cocaine from the vehicle and place the money back in the back seat or trunk area of the green vehicle." (Id.). Harrington told CS 3 that he "has seen several hundred thousand dollars of U.S. currency and kilograms of cocaine at the residence of Sheldon Smith in Xenia. Harrington bragged to CS 3 that Smith obtains fifty to sixty kilograms of cocaine from his Mexican connection each month." [7] (Id.).

**[\*P53]** After reviewing the foregoing affidavit, a Xenia Municipal Court judge issued a search warrant based on a finding of probable cause to believe that Smith had engaged in various drug-related offenses and that cocaine and/or crack cocaine, drug money, and other drug-related items would be found inside his

residence. (Doc. # 31 at Exh. A). Upon review, the trial court determined that the issuing judge properly had found probable cause to issue a search warrant. (Doc. # 47 at 9-11). The trial court then concluded that substantially similar affidavits from Polston did not support the issuance of search warrants for Smith's mother's home or for the L.A. Lounge. (Id. at 12-13).

[*P54] In its ruling, the trial court rejected an argument that Reginald Brooks was not a credible source of information. The trial court determined that Brooks' information was entitled to significant weight because he did not know he was speaking to a confidential source and to an undercover officer and, therefore, was more likely to be speaking truthfully. (Doc. # 47 at 9). The trial court also noted that some of Brooks' statements were against his penal interests, adding to their reliability. The trial court found that the statements made by CS 1 and Brooks were "sufficiently corroborated from multiple sources."  The trial court then found "that the affidavit sufficiently establishes the fact that Brooks was aware as well as the affiant that large quantities of cash and cocaine were maintained by Sheldon Smith in his residence[.]" (Id. at 10-11). Finally, the trial court stated:

[*P55] "In conclusion, under the totality of the circumstances, the Court finds that there is sufficient probable cause to believe based on the information provided by Reginald Brooks and the confidential sources under circumstances which have been corroborated, that Sheldon Smith is involved in trafficking large quantities of cocaine and large quantities of cash. Most importantly, the issuing magistrate was correct in concluding that Sheldon Smith receives quantities of cocaine on a monthly basis, that the information provided by the affiant is timely and not stale. The conclusion drawn by the issuing judge is correct that there is probable cause to search [Smith's residence]." (Id. at 11).

[*P56] On appeal, Smith disputes whether Polston's affidavit was sufficient to establish probable cause to support the issuance of a search warrant for his residence. Specifically, Smith raises a "staleness" issue and contends the affidavit did not establish probable cause to believe anything illegal was in his house when the warrant was issued. He also argues that the affidavit lacked any "first-hand knowledge" about what was in his residence. He additionally asserts that the first half of the affidavit focused "almost exclusively on the criminal enterprise of the alleged reliable source[.]" He further alleges that the affidavit was "fundamentally defective for its failure to state when many of the allegations were to have occurred or [to provide] any supporting

evidence to demonstrate reliability." Finally, Smith reiterates his claim that the affidavit failed to demonstrate the "present" existence of probable cause.

**[\*P57]** In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, following and quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238-239, 103 S. Ct. 2317, 76 L. Ed. 2d 527.

**[\*P58]** In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id. at paragraph two of the syllabus (citation omitted).

**[\*P59]** We note too that "[t]he Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." Id. at paragraph three of the syllabus (citation omitted). The rationale for this "good-faith" exception is that when police have acted in good faith on a warrant issued by a judge or magistrate, there is no police misconduct and, thus, nothing to deter. Id. at 331. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination[.] \* \* \* Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. Leon* (1984), 468 U.S. 897, 921, 104 S. Ct. 3405, 82 L. Ed. 2d

677. Nevertheless, an officer's reliance on a magistrate's probable-cause determination must be objectively reasonable. *George, 45 Ohio St.3d at 331*. Suppression remains proper "where (1) '* * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *'; (2) '* * * the issuing magistrate wholly abandoned his judicial role * * *'; (3) an officer purports to rely upon '* * * a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"'; or (4) '* * * depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.'" Id., quoting *Leon, supra, at 923*.

**[\*P60]** In the present case, we believe the municipal court judge had a substantial basis for finding a fair probability that the items identified in the search warrant would be found in Smith's home. As noted by the trial court, it was reasonable to credit the statements Reginald Brooks made to CS 1 and an undercover officer because those statements were against Brooks' penal interest. Moreover, it is apparent from Polston's affidavit that the identity of all three confidential sources was known to police. This makes the information they provided more reliable than information provided by an anonymous tipster. Moreover, all three confidential sources generally provided the basis for their knowledge, and police corroborated at least some of the information they received.

**[\*P61]** With regard to CS 1, we note that police received most of the information he provided through secret audio tapes in which they actually heard Brooks speaking. To the extent that police could listen to Brooks directly, they did not even need to rely on CS 1's veracity or reliability as a source. With regard to CS 2, he admitted to police that he had purchased crack cocaine from Carlos Anderson. He also helped police set up a controlled buy in which they caught Anderson's companion with two ounces of crack cocaine, the amount CS 2 had arranged to buy. CS 2's participation in this transaction helped establish his veracity and reliability. The following day, CS 2 advised police that Anderson used a certain residence as a "stash house" for drugs. Police subsequently executed a search warrant and found more than three-hundred grams of cocaine inside that house. This successful search added to CS 2's veracity and reliability. With regard to CS 3, he admitted to police that he had purchased cocaine from Donald Harrington

numerous times, thereby making a statement against his penal interests and adding to his reliability. CS 3 also told police that Harrington sold drugs for Sheldon Smith out of the L.A. Lounge. His basis for knowing this information presumably came from his prior purchases of cocaine from Harrington. CS 3 additionally stated that Harrington always put the money in an older green vehicle owned by Smith. Police independently confirmed that Smith owned a green 1992 Honda Accord, which helped to corroborate CS 3's claim. Police also established that Smith's mother was the president of the L.A. Lounge and owned its liquor license. CS 3 further told police that Harrington had admitted seeing several hundred thousand dollars in cash and kilograms of cocaine in Smith's residence. Harrington also told CS 3 that Smith obtains fifty to sixty kilograms of cocaine each month. CS 3 knew this information because Harrington told him, and Harrington presumably knew it because he sold drugs to CS 3 and others for Smith. Although CS 3 did not indicate when Harrington had seen the money and kilograms of cocaine in Smith's residence, we find it noteworthy that Harrington bragged to CS 3 about Smith receiving fifty to sixty kilograms of cocaine each month. The substantial size and regularity of this delivery gave the magistrate a reasonable basis for concluding that drugs remained present in Smith's home at the time of the warrant request.

**[\*P62]** Based on all of the information contained in Polston's affidavit, we cannot say the magistrate erred in finding a fair probability that contraband or evidence of a crime would be discovered in Smith's residence. In reaching this conclusion, we recognize that close or marginal cases should be resolved in favor of upholding a magistrate's probable cause determination. *George, supra*, at syllabus. But even if probable cause were lacking in the present case, we would find *Leon's* good-faith exception applicable. [a] There is no evidence that police misled the magistrate, that the magistrate wholly abandoned his judicial role, or that the affidavit was so lacking in indicia of probable cause as to make belief in its existence unreasonable. Accordingly, we overrule Smith's fifth assignment of error.

*State v. Smith,* 2010-Ohio-6229, 2010 Ohio App. LEXIS 5234 (2nd Dist. 2010)(Brogan, J.).

Smith has not demonstrated that this very extensive ruling is contrary to or an objectively unreasonable application of any United States Supreme Court precedent, *Franks* or otherwise. Moreover, this *Franks* argument is one arising under the Fourth Amendment and merits review

16

of Fourth Amendment claims in habeas is barred by *Stone v. Powell, supra*.

**Conclusion**

Having reviewed the case in light of Smith's Objections and new argument, the Magistrate Judge again concludes the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 24, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).